UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| OLGA PAULE PERRIER-BILBO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 1:17-12148-WGY |
| UNITED STATES and FRANCIS CISSNA, | ) | |
| Director, U.S. Citizenship and | ) | |
| Immigration Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

YOUNG, D.J.                                    September 28, 2018

**MEMORANDUM AND ORDER**

## I.    INTRODUCTION

In 2000, Olga Paule Perrier-Bilbo ("Perrier-Bilbo")
emigrated from France and settled in Scituate, Massachusetts.
In due course, she applied to become a United States citizen.
Having completed all the necessary requirements, she is fully
eligible for United States citizenship.

She balks, however, at the words "so help me God" which
conclude the oath of allegiance administered at United States
naturalization ceremonies.  United States Citizenship and
Immigration Services ("USCIS") offered her a private induction
which would omit the words she finds offensive.  Not

surprisingly, she wishes to participate in the public ceremony with other new citizens and their families and friends.  USCIS welcomed her at such a ceremony, assuring her she need not herself say those four words and her oath of allegiance and United States citizenship would nonetheless be fully valid.

Perrier-Bilbo will have none of it.  Evidently, she seeks a ceremony where neither the official administering the oath nor the new citizens will conclude by uttering the phrase "so help me God."

Perrier-Bilbo alleges that the phrase's inclusion in the oath violates the Establishment and Free Exercise Clauses of the First Amendment, Compl. ¶¶ 153-70, ECF No. 1; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, Compl. ¶¶ 171-82; and her rights to equal protection and procedural due process under the Fifth Amendment, Compl. ¶¶ 183-97.  Perrier-Bilbo seeks a declaration that these provisions have been violated and an injunction permanently enjoining the government "from placing 'so help me God' in future naturalization oath ceremonies," as well as reimbursement of the cost of her second naturalization application.  Id. at 41.

The United States and Francis Cissna, the Director of USCIS (collectively, the "Defendants"), move to dismiss the complaint for failure to state a claim and lack of standing.  Defs.' Mot. Dismiss & Mem. Supp. ("Defs.' Mot."), ECF No. 10.

## A.    Procedural History

On November 2, 2017, Perrier-Bilbo filed a complaint against the Defendants in this Court.[1]  See ECF No. 1.  The complaint includes claims for violations of the Establishment Clause and the Free Exercise Clause of the First Amendment; the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-2000bb-4; and the Fifth Amendment.  Id. ¶¶ 153-97.

The Defendants moved to dismiss the complaint on February 22, 2018.  Defs.' Mot., ECF No. 10.  On May 8, 2018, this Court heard oral argument on the motion, during which it advised the parties that it would treat the motion as cross-motions for summary judgment and took the motion under advisement.  See Electronic Clerk's Notes, ECF No. 20.

## B.    Undisputed Facts

Perrier-Bilbo is a citizen of France who moved to Scituate, Massachusetts in 2000.  Compl. ¶ 56.  In 2002, she became a permanent resident of the United States, and in 2004, she was issued a green card.  Id. ¶ 57.  In 2008, she applied for naturalization, fulfilling the necessary paperwork and interview requirements, and her application was approved.  Id. ¶¶ 58-66.

---

[1] Perrier-Bilbo also initially filed this action against the "Congress of the United States of America," but later voluntarily dismissed the complaint as against that party.  See Electronic Clerk's Notes, ECF No. 20.

She then received a form indicating that she was to take the oath of citizenship on March 4, 2009.  Id. ¶ 67.

In January 2009, Perrier-Bilbo wrote to USCIS requesting that she be permitted to take the oath without the phrase "so help me God."  Id. ¶ 69.  USCIS informed her that she could either participate in the oath ceremony and omit the "so help me God" language, or schedule a private oath ceremony in which the government would omit the phrase in administering the oath.  Id. ¶ 70.  A few months later, Perrier-Bilbo received a letter from USCIS stating that she had fifteen days to notify USCIS of her decision, and that if she declined to respond or choose one of the two options, USCIS would reopen her application and deny it for lack of prosecution.  Id. ¶ 73.

Perrier-Bilbo retained counsel, who informed USCIS that neither of the two options provided were satisfactory to Perrier-Bilbo.  Id. ¶ 74.  Further attempts to negotiate were unsuccessful, and USCIS eventually denied Perrier-Bilbo's application as abandoned, informing her that she could file a new application in the future.  Id. ¶ 80.  After years of trying and failing to obtain a waiver of the application fee, Perrier-Bilbo filed a second application in December 2014, which was granted.  Id. ¶¶ 83-84, 103, 108.  She was again sent a form indicating that she was scheduled for a naturalization oath ceremony to be held on April 6, 2017.  Id. ¶ 122.

[4]

That day, Perrier-Bilbo arrived at the United States District Court in Boston, where the ceremony was to take place, and attempted to explain her objection to an individual at the courthouse.  Id. ¶¶ 123-25.  That person told her that she didn't "have to say anything."  Id. ¶ 125.  Perrier-Bilbo further objected, and was eventually told to forgo the ceremony that day and contact USCIS.  Id. ¶ 126.

After speaking to someone at USCIS, Perrier-Bilbo was sent a letter in August 2017, notifying her that she was scheduled to participate in a naturalization oath ceremony taking place on September 14, 2017.  Id. ¶ 132.  The letter stated that due to her religious objections, she may take a modified oath in which she may decline to recite the portion of the oath to which she objects.  Id. ¶ 133.  "[H]owever," the letter continued, "please note that the full oath of allegiance will be administered on this day."  Id.  The letter informed her that the court could instead schedule a "private naturalization ceremony to take the modified oath of allegiance as you have requested."  Id. ¶ 134.  Perrier-Bilbo did not attend the ceremony.  Id. ¶ 136.

## II.  ANALYSIS

The Defendants move to dismiss Perrier-Bilbo's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defs.' Mot. 1.  Because Rule 12(b)(1) implicates this Court's jurisdiction, the Court addresses it first.

## A.    Standing

A party filing a complaint in federal court must demonstrate that she possesses Article III standing to raise her claims and that the court has subject matter jurisdiction over those claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  As the Supreme Court has explained:

> [T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan, 504 U.S. at 560-61 (internal citations omitted) (first quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990), then quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976), then quoting Simon, 426 U.S. at 38, 43).

First, the plaintiff must prove an "injury in fact."  Id. at 560.  When the question is whether a government action was or was not legal, and the plaintiff is herself the object of the

[6]

action, "there is ordinarily little question that the action or inaction has caused [her] injury." Id. at 561-62. Perrier-Bilbo correctly argues that she has a "concrete and particularized" interest in becoming a naturalized citizen of the United States as provided by federal law. See 8 U.S.C. §§ 1421-59; Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") 2, ECF No. 18. Here, Perrier-Bilbo also sufficiently alleges an "actual" invasion of her protected interest. Because of her unwillingness to speak the phrase "so help me God" as part of her oath of citizenship, she was afforded two different options: (i) to participate in the ceremony and omit the words; or (ii) to participate in a private ceremony, at which the words would not be included in the oath. Compl. ¶ 70. Perrier-Bilbo alleges that neither of these options satisfies her constitutional right to participate in a public ceremony without having to take part in a religion-imbued oath. Pl.'s Opp'n 3. Because of her objection, she claims, the ceremony was rescheduled twice and Perrier-Bilbo was forced to apply for naturalization (and pay the attendant fees) twice. Thus, Perrier-Bilbo has sufficiently alleged injury in fact.

Second, the Constitution requires a "causal connection" between the action complained of and the injury that the plaintiff has suffered. Lujan, 504 U.S. at 560. The Defendants argue that there is no causation because the alleged harm is

[7]

either attributable to Perrier-Bilbo's own actions, or to those
of the court administrating the naturalization ceremony.  Defs.'
Mot. 1, 8 ("[I]t was a third party -- this district court --
that ultimately decided how it would accommodate [Perrier-
Bilbo's] request.").  This Court disagrees.  Perrier-Bilbo
challenges the federal regulation providing for the inclusion of
the phrase to which she objects in the oath of citizenship.  She
has properly named as a defendant USCIS, which is the federal
government agency responsible for, among other duties,
"establish[ing] national immigration services policies and
priorities."  Homeland Security Act of 2002, 6 U.S.C.
§ 271(a)(3)(D).  Her alleged injury is thus fairly traceable to
the Defendants' actions.

     Third and finally, Perrier-Bilbo must demonstrate that it
is "'likely' . . . that the injury will be 'redressed by a
favorable decision.'"  Lujan, 504 U.S. at 561 (quoting Simon,
426 U.S. at 38).  This requirement is met when there is a
"likelihood that the requested relief will redress the alleged
injury."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,
103 (1998).  Here, Perrier-Bilbo seeks a declaration that the
inclusion of the phrase "so help me God" in the naturalization
oath violates the Constitution; an injunction permanently
enjoining the government "from placing 'so help me God' in
future naturalization oath ceremonies"; and reimbursement for

the cost of her second naturalization application.  Compl. 41.

A decision by this Court declaring the inclusion of the phrase

"so help me God" in the official oath of citizenship to be

unconstitutional would likely redress Perrier-Bilbo's alleged

injury.  Perrier-Bilbo consequently has the requisite standing

to bring her claims.

### B.   Perrier-Bilbo's Claims

A district court may, after giving the parties reasonable

notice and opportunity to present relevant materials, treat a

motion to dismiss as a motion for summary judgment.  <u>See</u> Fed. R.

Civ. P. 12(d); <u>Foley</u> v. <u>Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 73

(1st Cir. 2014).  Entry of summary judgment is appropriate where

"there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "[I]f the evidence is such that a reasonable

jury could return a verdict for the nonmoving party," however,

then summary judgment will not be granted.  <u>Anderson</u> v. <u>Liberty

Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In resolving a motion

for summary judgment, the Court is not to weigh the evidence,

but "must draw all reasonable inferences in favor of the

nonmoving party."  <u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>,

530 U.S. 133, 150 (2000).  Here, where there are no material

facts in dispute, the issue before the Court is one of law.

Under federal law, all persons wishing to become naturalized citizens must take either an oath or an affirmation of allegiance to the United States. 8 U.S.C. § 1448; 8 C.F.R. § 337.1. As provided by regulation, the oath reads:

> I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, of whom or which I have heretofore been a subject or citizen; that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I will bear arms on behalf of the United States when required by the law; that I will perform noncombatant service in the Armed Forces of the United States when required by the law; that I will perform work of national importance under civilian direction when required by the law; and that I take this obligation freely, without any mental reservation or purpose of evasion; so help me God.

8 C.F.R. § 337.1(a). Federal regulation also provides:

> When a petitioner or applicant for naturalization, by reason of religious training and belief (or individual interpretation thereof), or for other reasons of good conscience, cannot take the oath prescribed in paragraph (a) of this section with the words "on oath" and "so help me God" included, the words "and solemnly affirm" shall be substituted for the words "on oath," the words "so help me God" shall be deleted, and the oath shall be taken in such modified form.

8 C.F.R. § 337.1(b).

### 1.   The Establishment Clause

Under the First Amendment of the United States Constitution, Congress may not enact laws "respecting an establishment of religion." U.S. Const. amend. I.   This

[10]

amendment "guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" Lee v. Weisman, 505 U.S. 577, 587 (1992) (quoting Lynch v. Donnelly, 465 U.S. 668, 678 (1984)). Though the Supreme Court has articulated various tests to determine whether particular practices fall afoul of this clause, it has also explained that "it is not necessary to define the precise boundary of the Establishment Clause where history shows that the specific practice is permitted." Town of Greece v. Galloway, 134 S. Ct. 1811, 1819 (2014).

In Marsh v. Chambers, 463 U.S. 783 (1983), the Supreme Court heavily relied on history and tradition in upholding the constitutionality of a state legislature's practice of beginning its sessions with prayer by a state-paid chaplain.  It explained that because the practice of legislative prayer is so "deeply embedded in the history and tradition of this country," it is permissible "where . . . there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." Id. at 786, 794-95.

The Supreme Court again relied on this principle in affirming the constitutionality of the prayer practice at a small town's monthly board meetings.  In Town of Greece v.

[11]

Galloway, the Court rejected the plaintiffs' contention that the
sectarian nature of the prayers (for instance, referring to the
"Savior Jesus Christ") rendered them constitutionally
objectionable.   134 S. Ct. at 1820-22.   Justice Kennedy observed
that "[a]n insistence on nonsectarian or ecumenical prayer . . .
is not consistent with the tradition of legislative prayer
outlined in the [Supreme] Court's cases."   Id. at 1820.   The
Supreme Court also disagreed with the contention that "the
setting and conduct of the town board meetings create social
pressures that force nonadherents to remain in the room or even
feign participation in order to avoid offending the
representatives who sponsor the prayer and will vote on matters
citizens bring before the board."   Id.   After noting the lack of
evidence that the town leaders treated citizens declining to
join in the prayer any differently from those who did, Justice
Kennedy explained that "in the general course legislative bodies
do not engage in impermissible coercion merely by exposing
constituents to prayer they would rather not hear and in which
they need not participate."   Id. at 1827.

    Though this guidance from the Supreme Court derives from
the context of legislative prayer, rather than government oaths,
it nevertheless dooms Perrier-Bilbo's claim.   First, the use of
the phrase "so help me God" or similar invocations in public
oaths and statements is, along with legislative prayer, a well-

[12]

established tradition that can be traced back to the nation's founding. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 26-29 (2004) (Rehnquist, C.J., concurring in judgment) (itemizing examples of the invocation of God by various Presidents beginning with George Washington in their inaugural oaths and other proclamations and addresses); Newdow v. Roberts, 603 F.3d 1002, 1018-19 (D.C. Cir. 2010) (Kavanaugh, J., concurring in judgment) (observing that, "like the practice of legislative prayer, use of 'so help me God' in oaths for government officials is deeply rooted in the Nation's history and tradition" and cataloging numerous state and federal oaths that presently include the phrase); Judiciary Act of 1789, ch. 20, § 8, 1 Stat. 76 (requiring federal judges to take an oath containing the phrase "so help me God"). Like legislative prayer, then, it "has become part of our heritage and tradition, part of our expressive idiom, similar to the Pledge of Allegiance, inaugural prayer, or the recitation of 'God save the United States and this honorable Court' at the opening of [the Supreme Court's] sessions." Town of Greece, 134 S. Ct. at 1825.

Second, the religious invocations held to be constitutional in Town of Greece and Marsh were more sectarian than is the phrase "so help me God." Even the Town of Greece plaintiffs based their argument on the theory that "legislative prayer may be addressed only to a generic God." Id. at 1822. Similarly,

they argued that "prayer conducted in the intimate setting of a town board meeting differs in fundamental ways from the invocations delivered in Congress and state legislatures, where the public remains segregated from legislative activity and may not address the body except by occasional invitation." Id. at 1824-25.  The naturalization ceremony at issue here is much more comparable to these circumstances that even the Town of Greece plaintiffs conceded were constitutional: no sectarian language is used, and would-be citizens such as Perrier-Bilbo have little to no opportunity for interaction with, or prejudice from, those leading the ceremony.  Further, both options offered to Perrier-Bilbo -- omitting the phrase when she says the oath or taking her own, private naturalization oath without the phrase -- are akin to the options available to the town citizens in Town of Greece and considered permissible, non-coercive alternatives by the Supreme Court:

> Should nonbelievers choose to exit the room during a prayer they find distasteful, their absence will not stand out as disrespectful or even noteworthy.  And should they remain, their quiet acquiescence will not, in light of our traditions, be interpreted as an agreement with the words or ideas expressed.  Neither choice represents an unconstitutional imposition as to mature adults . . . .

See id. at 1827.

Finally, this Court ought not overlook the overwhelmingly consistent precedent and dicta addressing similar challenges.

[14]

Notably, the First Circuit has upheld the constitutionality of a state statute requiring that public schools provide time for voluntary recitation of the Pledge of Allegiance, in which the phrase "under God" is used.  Freedom From Religion Found. v. Hanover Sch. Dist., 626 F.3d 1, 15 (1st Cir. 2010).  Other courts and judges to consider the issue have consistently observed, assumed, or held that the use of "so help me God," "under God," or "God" in government oaths and other state-sanctioned practices is permissible.  See School Dist. of Abington Twp. v. Schempp, 374 U.S. 203, 213 (1963) (observing that the nation's historical ties to religion are "evidenced today in our public life through the continuance in our oaths of office . . . of the final supplication, 'So help me God'"); Zorach v. Clauson, 343 U.S. 306, 312-13 (1952) (noting that "common sense" dictates that practices such as the use of "'so help me God' in our courtroom oaths" are permissible); Myers v. Loudoun Cty. Pub. Schs., 418 F.3d 395, 408 (4th Cir. 2005) (upholding constitutionality of statute requiring daily, voluntary recitation of the Pledge of Allegiance in public schools).  In at least two instances where the majority opinion declined to reach the merits because of the lack of standing, concurring judges and Justices have concluded that such practices are permissible.  See Elk Grove, 542 U.S. at 18 (ops. concurring in judgment of Rehnquist, C.J., O'Connor, J., and

Thomas, J.) (determining policy requiring public school teachers to lead voluntary daily recitation of Pledge of Allegiance to be constitutional); Newdow, 603 F.3d at 1022 (Kavanaugh, J., concurring in judgment) (concluding that inclusion of "so help me God" in the Presidential oath does not violate the Establishment Clause).   Indeed, the Fourth Circuit has made the "striking" observation that "given the vast number of Establishment Clause cases to come before the [Supreme] Court, not one Justice has ever suggested that the Pledge is unconstitutional."   Myers, 418 F.3d at 406.

To be sure, "[t]he fact that religious words are common to many faiths -- or are used repeatedly -- does not diminish their religious meaning."   Newdow, 603 F.3d at 1016 (Kavanaugh, J., concurring in judgment).   "So help me God" has some religious content, as "[a] belief in God is a religious belief."   Freedom From Religion Found., 626 F.3d at 7.   As Supreme Court precedent has established, however, that the phrase "has some religious content . . . is not determinative of [the regulation's] constitutionality."   Id.   Like the ceremonial prayer in Town of Greece, the inclusion of "so help me God" in the oath of citizenship "is but a recognition that, since this Nation was founded and until the present day, many Americans deem that their own existence must be understood by precepts far beyond the authority of government to alter or define and that willing

[16]

participation in civic affairs can be consistent with a brief acknowledgment of their belief in a higher power, always with due respect for those who adhere to other beliefs." Town of Greece, 134 S. Ct. at 1827-28.  The regulation providing for the phrase's inclusion in the naturalization oath does not violate the Establishment Clause.

### 2.   The Free Exercise Clause

The Free Exercise Clause provides that the government may not "(1) compel affirmation of religious beliefs; (2) punish the expression of religious doctrines it believes to be false; (3) impose special disabilities on the basis of religious views or religious status; or (4) lend its power to one side or the other in controversies over religious authorities or dogma." Parker v. Hurley, 514 F.3d 87, 103 (1st Cir. 2008).  "The Free Exercise Clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate the conduct of the Government's internal procedures." Bowen v. Roy, 476 U.S. 693, 700 (1986). Accordingly, the government does not violate the Free Exercise Clause unless its action has a "coercive effect" with respect to the plaintiff's religious practice. Parker, 514 F.3d at 103 (citing Schempp, 374 U.S. at 223).

In Freedom From Religion Foundation, the First Circuit reasoned that schoolchildren's "mere exposure to the religious

content of the Pledge [of Allegiance]" lacked a coercive effect
and thus did not violate the Free Exercise Clause.   626 F.3d at
14.   So too here, Perrier-Bilbo's "mere exposure" to the phrase
"so help me God" in the oath of citizenship does not compel her
affirmation of a religious belief.   She is not required to
"agree with or affirm [religious beliefs], or . . . participate
in discussions about them."   Parker, 514 F.3d at 106.   In fact,
USCIS representatives repeatedly informed Perrier-Bilbo that she
did not need to recite the phrase "so help me God" and that she
could avoid even "mere exposure" to that phrase by taking her
oath at a private ceremony.   See, e.g., Compl. ¶¶ 70, 123-25.
Even if USCIS had not offered Perrier-Bilbo the option of taking
the oath at a private ceremony, the government policy would pass
constitutional muster.   The choice to remain silent, although a
"quiet acquiescence[,] will not, in light of our traditions, be
interpreted as an agreement with words or ideas expressed"
because citizenship oath takers are "mature adults," who
"'presumably' are 'not readily susceptible to religious
indoctrination or peer pressure.'"   Town of Greece, 134 S. Ct.
at 1827 (quoting Marsh, 463 U.S. at 792).   As such, Perrier-
Bilbo's Free Exercise Clause claim fails.

### 3.   The Religious Freedom Restoration Act

The Religious Freedom Restoration Act ("RFRA") provides
that the government "shall not substantially burden a person's

exercise of religion" unless it is "in furtherance of a compelling governmental interest" and "is the least restrictive means" of doing so.   42 U.S.C. § 2000bb-1.   A substantial burden exists "where [the government] denies [an important] benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs."   Thomas v. Review. Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 717-18 (1981).   At a minimum, Perrier-Bilbo must show that she suffered more than an inconvenience as a consequence of the government's policy.   See, e.g., New Doe Child #1 v. Congress of United States, 891 F.3d 578, 590 (6th Cir. 2018); Vision Church v. Village of Long Grove, 468 F.3d 975, 999 (7th Cir. 2006); Worldwide Church of God v. Philadelphia Church of God, Inc., 227 F.3d 1110, 1121 (9th Cir. 2000).

Perrier-Bilbo believes that she would be "violating her religious tenets by taking part in a ceremony where the official oath being subscribed to ends 'so help me God.'"   Pl.'s Opp'n 13.   While she recognizes that she can take the oath in a separate ceremony in which the phrase will be removed from the oath, she considers that option akin to segregation and "grossly offensive."   Id. at 14.   She suggests that in order to follow her beliefs, she is impermissibly forced to sacrifice the benefit of "join[ing] as an equal with her co-participants and

take the oath of naturalization that is codified in 8 C.F.R. [§]
337.1." Id. at 15.

Perrier-Bilbo is undoubtedly sincere in her beliefs and in
the offense she takes to the inclusion of "so help me God" in
the oath of citizenship.  "Offense, however, does not equate to
coercion." Town of Greece, 134 S. Ct. at 1826; see also Parker,
514 F.3d at 106 (explaining that public schools need not "shield
individual students from ideas which potentially are religiously
offensive").  In light of the two options afforded to Perrier-
Bilbo, this Court cannot hold that the government conduct here
imposes "substantial pressure" on her to violate her beliefs.
While Perrier-Bilbo may subjectively consider it burdensome
either to omit the phrase or to request a private ceremony, not
every minor imposition rises to the level of a substantial
burden, the existence of which is a purely legal issue for the
Court.  See Gary S. v. Manchester Sch. Dist., 374 F.3d 15, 21-22
(1st Cir. 2004) (concluding that, notwithstanding the
plaintiffs' sincere belief that a government program burdened
their "religion or free exercise thereof," they had not
demonstrated a legally cognizable burden for RFRA purposes); see
also Zorach, 343 U.S. at 312, 314 ("The First Amendment . . .
does not say that in every and all respects there shall be a
separation of Church and State. . . . The problem, like many
problems in constitutional law, is one of degree."); Eternal

Word Television Network, Inc. v. Secretary of U.S. Dep't of Health & Human Servs., 818 F.3d 1122, 1145 (11th Cir. 2016) ("The plain language of RFRA simply does not support reducing the role of federal courts to 'rubber stamps' that automatically recognize a substantial burden whenever a religious adherent asserts there is one."). As neither remaining silent during the phrase "so help me God" nor attending a private ceremony would do more than merely inconvenience Perrier-Bilbo, she has not shown that the government's policy substantially burdens her in violation of RFRA.

### 4.   The Equal Protection Clause

The equal protection component of the Fifth Amendment's Due Process Clause "guarantees that those who are similarly situated will be treated alike." Freedom From Religion Found., 626 F.3d at 14 (quoting In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008)). Perrier-Bilbo's equal protection claim fails because the regulation providing the text of the oath of citizenship "do[es] not require different treatment of any class of people because of their religious beliefs" or "give preferential treatment to any particular religion." Wirzburger v. Galvin, 412 F.3d 271, 283 (1st Cir. 2005). Rather, the regulation's explicit provision for any individual who does not wish to speak the words "so help me God" while taking the oath demonstrates that it "applies equally to those who believe in

[21]

God, those who do not, and those who do not have a belief either way, giving adherents of all persuasions the right to participate or not participate in reciting the pledge, for any or no reason." Freedom From Religion Found., 626 F.3d at 14 (quoting Freedom From Religion Found. v. Hanover Sch. Dist., 665 F. Supp. 2d 58, 72 (D.N.H. 2009)).

### 5.   The Due Process Clause

Nor does the regulation violate Perrier-Bilbo's procedural due process rights.  Perrier-Bilbo contends that "the government is requiring her, in essence, to commit perjury in order to become a citizen" because she cannot declare that she will support and defend the Constitution "while simultaneously being required to ignore a constitutional violation."  Pl.'s Opp'n 19-20.  Because the oath's inclusion of the phrase "so help me God" is not unconstitutional, however, Perrier-Bilbo is not in fact being "required to ignore a constitutional violation."

Further, as mentioned above, she is not "required" to take the oath in a ceremony during which the words "so help me God" are spoken.  She does not dispute that she may choose to take the oath in a private setting, where the oath itself will be modified to exclude that phrase.  As Perrier-Bilbo does not otherwise "identify a protected liberty or property interest and allege that the defendants, acting under color of . . . law, deprived [her] of that interest without constitutionally

[22]

adequate process," <u>González-Droz</u> v. <u>González-Colón</u>, 660 F.3d 1, 13 (1st Cir. 2011) (quoting <u>Aponte-Torres</u> v. <u>University of P.R.</u>, 445 F.3d 50, 56 (1st Cir. 2006)), her procedural due process claim also fails.

## III. CONCLUSION

For the aforementioned reasons, this Court GRANTS summary judgment in favor of the Defendants and judgment will enter denying Perrier-Bilbo's claims.

**SO ORDERED.**

_William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE